|   |                                                         |   |                                |
|---|---------------------------------------------------------|---|--------------------------------|
|   | **UNITED STATES DISTRICT COURT**                        |   |                                |
|   | **DISTRICT OF NEVADA**                                  |   |                                |

| | |
|---|---|
| MARCO MONTENEGRO, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:18-cv-1619-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| CITY NATIONAL BANK, a foreign banking ) | |
| corporation, ) | |
| Defendant. ) | |
| _____) | |
| CITY NATIONAL BANK, a foreign banking ) | |
| corporation, ) | |
| ) | |
| Counter Claimant, ) | |
| vs. ) | |
| ) | |
| MARCO MONTENEGRO, ) | |
| ) | |
| Counter Defendant. ) | |

Pending before the Court is the Motion, (ECF No. 6), filed by Defendant/Counter-Claimant City National Bank ("City National"), requesting an order to show cause as to why: (1) property should not be taken from the counter-defendant and delivered to City National by writ of possession; and (2) a temporary restraining order should not be issued ("Motion"). Plaintiff/Counter-Defendant Marco Montenegro ("Montenegro") filed a Response, (ECF No. 14), and City National filed a Reply, (ECF No. 15).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** City National's Motion.

I. **BACKGROUND**

This case concerns the mistaken transfer of customer information from City National to Montenegro. This transfer occurred on January 29, 2018, when City National unintentionally

sent an email attachment of customer banking records to Montenegro, who had recently applied for a small business loan with City National. (Compl. ¶¶ 12, 16, ECF No. 1); (Decl. of Bruce Ford ¶¶ 6–9, ECF No. 7); (Decl. of Julie Higgins ¶¶ 7–8, ECF No. 8). Those banking records included sixty-one pages of confidential customer information unrelated to Montenegro's loan application, such as account statements for seven "internal City National accounts" and seven accounts "held by individuals and entities that were customers" of City National ("Account Statements"). (Decl. of Bruce Ford ¶ 9, ECF No. 7).

Montenegro informed City National of the mistaken transfer on January 31, 2018. (Decl. of Marco Montenegro ¶ 2, Ex. A to ECF No. 14); (Decl. of Julie Higgins ¶ 8, ECF No. 8). City National then requested that Montenegro return the Account Statements and erase any information derived from them or stored on Montenegro's personal electronic devices. (Decl. of Julie Higgins ¶ 8, ECF No.8).

After several attempted meetings and discussions between Montenegro and City National employees to ensure the destruction of the Account Statements, Montenegro filed this lawsuit. (Decl. of Marco Montenegro ¶¶ 5–7, Ex. A to ECF No. 14); (Decl. of Julie Higgins ¶¶ 10–12, ECF No. 8). Montenegro alleges that City National employees aggressively tried to force Montenegro to return the Account Statements and involuntarily sign a "Release/Waiver" declaring Montenegro to be "solely responsible for any damages that occurred from [City National's] breach," among other terms. (Compl. ¶¶ 22–29, ECF No. 1). In response, City National filed a counterclaim against Montenegro on the grounds that Montenegro had improperly refused to return or destroy the Account Statements and wrongfully threatened to interfere with the business relationships between City National and those named in the Account Statements. (Countercl. ¶¶ 48, 50, 60–67, 69–71, ECF No. 5).

Through the instant Motion, City National seeks an Order requiring Montenegro to submit his electronic devices to a third-party forensic consultant for inspection and permanent

deletion of all references to, and copies of, the Account Statements. (Mot. 3:1–4, ECF No. 6). City National also requests that the Court determine if a temporary restraining order is necessary to prohibit Montenegro from using the Account Statements or sharing that information. (*Id.* 3:4–7).

## II. **LEGAL STANDARD**

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Further, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. "'Serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to

obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

## III. DISCUSSION

City National's Motion requests that the Court issue a prejudgment temporary writ of possession and temporary restraining order. (Mot. 11:18–19, ECF No. 6). Specifically, City National requests an order instructing the proper authorities to take temporary custody of various electronic devices owned by Montenegro in order for City National to recover its Account Statements. (*Id.* 2:16–28, 15:10–23). After the proper authorities take custody of those devices, City National requests that the order provide for expert third-party inspection of Montenegro's devices, deletion of all references to and copies of the Account Statements, and identification of any individuals with whom Montenegro may have shared the Account Statements. (*Id.* 3:1–4). Last, City National asks for a temporary restraining order prohibiting Montenegro from using or disclosing the Account Statements, and information derived from it, in any way. (*Id.* 3:4–7). As explained below, the Court finds that an Order forcing Montenegro to turn over his devices is inappropriate; however, the facts at this time warrant a temporary restraining order to prohibit Montenegro from disclosing information related to the Account Statements.

### A. Recovery of Property

Federal Rule of Civil Procedure 64(a) permits federal courts to apply prejudgment remedies created under state law. The prejudgment remedy that City National invokes in its Motion comes from Nevada Revised Statute ("NRS") 31.840, which permits a party to recover personal property from a wrongful possessor prior to the final judgment of a case. A party

initiates prejudgment recovery under NRS 31.840 by providing the petitioned court with an affidavit showing: (1) the party is the owner, or lawfully entitled to possession, of the property at issue; (2) the opposing party is currently in wrongful possession of the property; (3) the cause of the opposing party's wrongful possession; (4) the opposing party's possession is not from a tax, assessment, fine, or related statutory right; and (5) the value of the property at issue. Nev. Rev. Stat. § 31.850; *Ewing v. Fahey*, 472 P.2d 347, 350 (1970). Upon receiving this affidavit, the petitioned court then informs the non-moving party of the affidavit and sets a hearing to preliminarily determine "with reasonable probability" through testimony and evidence which party is entitled to possession of the property during the lawsuit. Nev. Rev. Stat. § 31.863. After deciding which party is entitled to possession, the court orders the appropriate legal authorities to seize the property. Nev. Rev. Stat. § 31.870 ("[T]he sheriff shall forthwith take the property described in the writ, if it be in the possession of the defendant or the defendant's agent, and retain it in the sheriff's custody.").

Here, the Court finds that a hearing under NRS 31.840 is unnecessary because Montenegro does not dispute that City National is entitled to possession of the Account Statements. (*See* Resp. 6:17–18, ECF No. 14) ("There is no question the documents belong to [City National]."); (*see also* Decl. of Marco Montenegro ¶¶ 2–3, Ex. A to ECF No. 14). Similarly, the Court will not order the seizure of Montenegro's electronic devices that hold the Account Statements. Though City National only requests a temporary seizure, City National has not provided the Court with authority to support a seizure—even for a limited time—of any devices that City National neither owns nor has a right to possess. Indeed, Nevada law shows the opposite: that seizure under NRS 31.840 is only appropriate when the petitioning party has a right to possess the property to be seized and that property is the same property wrongfully held by another. *See, e.g.*, *Ewing*, 472 P.2d at 350 ("[T]he debtor, if he so desires, can recover possession of *his property* while the parties' respective rights are awaiting determination.")

## B. Preliminary Injunctive Relief

Because City National does not have the right to seize Montenegro's devices, the only remaining issue is whether preliminary injunctive relief is necessary. In particular, City National seeks a temporary restraining order directing Montenegro to give the Account Statements to City National and preventing Montenegro from sharing information derived from the Account Statements. (Mot. 17:28–18:6, ECF No. 6).

To earn a temporary restraining order, City National must show: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20. Under the Ninth Circuit's "sliding scale" approach, a stronger showing of one element may offset a weaker showing of another, as long as the moving party establishes that irreparable harm is likely. *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

### i. Likelihood of Success on the Merits

Beginning with the likelihood of success on the merits, City National brings three claims against Montenegro: civil extortion; claim and delivery; and conversion. (Countercl. ¶¶ 49–75, ECF No. 5). For preliminary injunctive relief, City National need only show that it is likely to succeed on one claim, and here City National focuses on "claim and delivery." (Mot. 17:28–18:2, ECF No. 6). City National thus must show a right to the personal property at issue and an opposing party's wrongful retainer of that property. Nev. Rev. Stat. § 31.840 *et seq.*; *see generally Ewing*, 472 P.2d at 350. As discussed above, City National has established a likelihood of success on this claim by showing that Montenegro does not rightfully possess the Account Statements, which Montenegro does not dispute. (Resp. 6:17–18, ECF No. 14).

### ii. Irreparable Harm

Next, as for irreparable harm, City National points to the likelihood of lost customer goodwill and damage to its reputation without an order preventing Montenegro from disclosing information in the Account Statements. (Mot. 17:26–28, ECF No. 6); (Reply 7:2–9, ECF No. 15). In the context of banking, lost customer goodwill and damage to reputation are recognized forms of irreparable injuries for which there is generally no adequate remedy at law. *See, e.g.*, *Bofi Fed. Bank v. Erhart*, No. 15-cv-02353-BAS(NLS), 2016 WL 4680291, at *9 (S.D. Cal. Sept. 7, 2016) ("[T]he publishing of customers' nonpublic information could cause irreparable harm to [the bank] by causing a loss of goodwill and damaging its reputation."). Nevertheless, City National holds the burden of showing an imminent likelihood of these irreparable injuries in the future. *Id.*; *c.f. Wells Fargo Clearing Servs., LLC v. James F. Foster*, No. 3-18-cv-00032-MMD-VPC, 2018 WL 1746307, at *3 (D. Nev. Apr. 11, 2018).

Here, City National shows a likelihood of irreparable injury through declarations by City National employees. These declarations provide evidence of Montenegro threatening to publish the Account Statements in addition to already having informed friends and an affected customer about the mistakenly provided Account Statements. (Decl. of Julia Higgins ¶¶ 13–14, ECF No. 8); (Decl. of Bruce Ford ¶ 11, ECF No. 7). Accordingly, City National satisfied its burden to show likely—not just possible—irreparable injury to its goodwill and reputation if the Court does not impose a temporary restraining order to prevent Montenegro's disclosure.

However, City National has not proven a likelihood of irreparable injury if the Court's Order does not correspondingly compel Montenegro to return the Account Statements. Though City National argues that Montenegro may inadvertently publish the Account Statements if the information is not removed from his electronic devices, that fear is speculative and insufficiently supported to warrant injunctive relief for the claimed irreparable injuries. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative

injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); (Mot. 17:26–27, ECF No. 6); (Reply 7:5–7, ECF No. 15). In fact, Montenegro has taken steps to prevent inadvertent disclosures by providing his attorney with physical printouts of the Account Statements. (Decl. of Marco Montenegro ¶ 11, Ex. A to ECF No. 14). Further, Montenegro has volunteered to provide his electronic devices to a third-party computer forensic consultant named by City National to inspect and remove the Account Statements— the same remedy that City National proposes, and a remedy that City National offers to fund.[1] *Compare* (Resp. 10:24–11:13, ECF No. 14), *with* (Reply 7:20–8:7, ECF No. 15).

### *iii. Balance of Equities and Public Interest*

Looking last to the balance of equities and public interest, the Court finds that both elements favor a temporary restraining order. The balance of equities favors a temporary restraining order because the Court's mandate is limited to preventing Montenegro from disclosing the confidential information in the Account Statements; yet he is free to take any actions throughout this case that are necessary to return the Account Statements, and he need not turn over his electronic devices that solely belong to him. Likewise, public interest favors a temporary restraining order to protect the innocent customers whose information appears in the Account Statements. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002) ("The public interest inquiry primarily addresses [the] impact on non-parties rather than parties.").

---

[1] On December 5, 2018, City National filed a Supplemental Brief, (ECF No. 16), identifying Adrian Leon Mare as a potential third-party forensic inspector of Montenegro's electronic devices for the identification and removal of the Account Statements. That Supplemental Brief includes the Curriculum Vitae of Mr. Mare, which details his extensive experience as an independent digital forensics expert. (Curriculum Vitae at 2–6, ECF No. 16-1). At this time, the Court is not aware if Montenegro agreed to voluntarily submit his electronic devices to Mr. Mare, but Montenegro stated in his Response that he is "waiting for [City National] to identify a forensic analysis firm to take custody of [the Account Statements] and to analyze Mr. Montenegro's computers . . . ." (Resp. 2:19–22, ECF No. 14).

### C. Bond

Rule 65(c) of the Federal Rules of Civil Procedure requires that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully . . . restrained." Fed. R. Civ. P. 65(c). Thus, the primary purpose of such a bond in this case is to safeguard Montenegro from costs and damages incurred as a result of a preliminary injunctive relief improvidently issued. *Roul v. George*, No. 2:13-CV-01686-GMN, 2013 WL 5781736, at *5 (D. Nev. Oct. 25, 2013). Here, neither party discusses a reasonable bond amount if the Court were to issue an injunction. Nevertheless, the Court awards a nominal bond of $100.00. *See Roul*, No. 2:13-cv-01686-GMN, 2013 WL 5781736, at *5 ("[O]nly a nominal bond is necessary in this case. Therefore, this Order shall go into effect upon Plaintiffs' posting of a bond in the amount of $100.00.").

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Order to Show Cause Why: (1) Property Should Not Be Taken from the Counter-Defendant and Delivered to Counter-Claimant by Writ of Possession; and (2) a Temporary Restraining Order Should Not Be Issued, (ECF No. 6), filed by City National is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that the parties must file a joint status report by January 22, 2019, explaining the status of any voluntary inspections of Montenegro's electronic devices for the deletion of the Account Statements through City National's identified third-party computer forensic consultant, Adrian Leon Mare.

**IT IS FURTHER ORDERED** that a temporary restraining order will issue until December 20, 2018, under the following terms, which arise in part from City National's Proposed Temporary Restraining Order, (Ex. 3 to Mot. 3:19–23, ECF No. 6):

Montenegro is hereby enjoined from disclosing or otherwise utilizing the Account Statements, or any information contained in those documents, including the names of the Account Holders, the addresses of the Account Holders, any account numbers and/or account balances, for any purpose other than one approved by the Court.

**IT IS FURTHER ORDERED** that the temporary restraining order will automatically convert into a preliminary injunction after December 20, 2018, and will last until trial as a preliminary injunction unless Montenegro provides the Court with new facts that show preliminary injunctive relief is no longer warranted.

**IT IS FURTHER ORDERED** that this Order shall go into effect upon City National's posting of a bond in the amount of **ONE HUNDRED ($100.00) DOLLARS**.

**DATED** this __6__ day of December, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court